WILLIAM SANDER et al., Appellants, v. GEORGE M. HOFFMAN et al., Respondents.

Where A. sells out the stock and good-will of a retail business to B., covenanting not to engage in, or carry on, the same business within certain limits, it is not necessary, in order to establish a breach of the covenant, to show that A. has solicited custom within the prescribed limits; if he, having established himself in the same business outside of the district, systematically and for profit, to an extent to constitute the carrying on of a business, sends to the houses of customers within the district, receives orders and delivers goods; this is a breach of the covenant, although it be done at the request of the customers and without his solicitation.

If, occasionally, to oblige an old customer, A. sells to him goods, this is not a breach.

(Argued February 8, 1876; decided February 22, 1876.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of defendants entered upon a verdict, and affirming an order denying a motion for a new trial. Reported below, 7 J. & S., 307.)

This action was brought to recover a sum fixed as liquidated damages for breach of a covenant.

The defendant, George Hoffman, had, prior to May 1, 1871, been engaged in a retail business in the city of New York, as a dealer in meat, fish, vegetables and provisions. On that day he sold out to plaintiffs his stock in trade, fixtures, etc., and the good-will of the business, and in consideration of the purchase, defendants covenanted that they would neither " jointly or severally, as agent or principal, engage in or carry on any similar or competitive retail butcher, and fish and vegetable and provision business, for a period of five years from the date of the agreement," within certain prescribed limits. The facts and the questions raised upon the trial appear sufficiently in the opinion.

*Charles H. Smith* for the appellants. Defendants were guilty of acts which constituted a breach of their contract with plaintiffs. (Bump's Pr. [8th ed.], 456; *Parker Mills* v. *Comr. Taxes*, 23 N. Y., 242; 4 Campbell's Lives Ch. Just.; *Corn. Ex. Ins. Co.* v. *Babcock*, 42 N. Y., 613.)

*John L. Hill* for the respondents. In doing the acts complained of, defendants did not engage in, or carry on, a similar or competitive business. (*Turner* v. *Evans*, 2 El. & Bl., 512, 518; 2 De G., M. & G., 740; *Lee* v. *Erhart*, 19 L. T. [N. S.], 637.)

Rapallo, J. The covenant, for the breach of which this action was brought, was, that the defendants would not engage in or *carry on* the specified business during five years from the date of the agreement, within certain limits, in the city of New York. This covenant was given in connection with a sale, by the defendants, of their establishment, within

the described limits, and of the good-will of the business, which the defendants had previously carried on there, and was intended to secure to the plaintiffs the enjoyment of such good-will, and protect them against competition by the defendants.

No question is raised as to the validity of the covenant; and the only point litigated at the trial was whether it had been broken by the defendants.

The business was the retail butcher, fish, vegetable and provision business. The plaintiffs, in support of their allegation of the breach of the covenant, proved that in May, 1872, a year after the covenant was made, the defendants set up a similar establishment to that which they had sold to plaintiffs, a short distance outside of the prescribed limits, but supplied some of their old customers residing within said limits, by sending daily to their residences a wagon, with the provisions which they needed, and receiving through the messenger who carried them, orders for the following day, and so on from day to day.

The number of customers shown to have been thus supplied was few; only four instances were shown upon the trial. One customer was thus supplied for only a few weeks; one for about four months, to the amount in the aggregate of $180; one from October, 1872, to the time of the examination of the witness; the other from the time the defendants opened their new store, in 1872, down to the time of the examination of the witness, in March, 1873. The amount of the business thus done does not appear.

There was evidence that the custom of these persons, or some of them, had been solicited by the defendants; this was denied by the defendants, who claimed that the customers voluntarily and without solicitation proposed to deal with them on being informed that they had resumed business.

The judge charged the jury that if they found that the defendants themselves, or by their agents, went into the prescribed limits and there solicited or procured orders for meats, etc., and that the defendants received and filled such orders,

it was a breach of the covenant; but that if they found that the defendants did not go into the prescribed limits and procure such orders, but that the persons within such limits voluntarily and without solicitation of defendants gave them orders (and whether they gave their orders within such limits or otherwise was immaterial), the filling of such orders was not a breach of the covenant. Exception was duly taken to this last proposition.

The jury having retired afterward returned and asked the court this question: "Is the sending an agent, every day, to the houses in the limited district, to take orders and filling them, a competitive business, or soliciting the same?"

To which the court replied: "In the construction I have given the contract it would not be; the orders must have originally been procured by the solicitation of the defendants. If they proceeded from the customers, and not by the procurement of the defendant, it was not a breach to fill them." Exception was duly taken to this ruling.

The effect of these instructions to the jury was so to limit the operation of the covenant as to restrain the defendants merely from soliciting the patronage of customers within the district, and leave them at liberty to carry on business there to any extent, by sending their wagon daily to houses in the district, receiving orders there and delivering the provisions ordered, provided, the original proposition so to deal proceeded from the customer and not from the defendants. Such a construction of the covenant would, in our judgment, entirely defeat the purpose for which it was taken and, substantially, deprive the plaintiffs of the protection which it was intended to afford them, and in consideration of which they had bought and paid for the good-will of the defendants' business. The business of supplying the inhabitants of the district with meat, provisions, etc., and sending to their dwellings to receive orders, was the very business which the plaintiffs purchased.

If the defendants were at liberty to carry on the same business, naturally their old customers, and those to whom

they were known by reputation, would prefer dealing with them to employing the new concern. It was immaterial to the customers where the store or shop was, for the supplies were brought to their doors, and orders received there. It was this very good-will — the disposition of the inhabitants of the district to deal with the defendants — which they undertook to sell to the plaintiffs. The covenant of the defendants bound them to do more than refrain from soliciting patronage. It bound them not to carry on the business within the prescribed district, and if applied to for that purpose, it was their duty to decline on the ground that they had covenanted not to do so. The greater the reputation of the defendants' establishment, and the disposition of their former customers to deal with them, the more valuable was the good-will which the plaintiffs purchased; but, upon the construction put upon the covenant by the court below, if the defendants were sufficiently popular to cause their former customers to seek them, they might retain all their former business so long as they did not take the initiative in soliciting the continuance of the custom. In the case of *Smith* v. *Smith* (4 Wend., 468), which was an action upon a bond given by a physician that he would not locate himself and practice his profession within prescribed limits, and in case he should so locate or practice, that he should pay a certain sum per month, the obligor located himself outside of the limits, but visited patients within them, and he was held liable. It was not intimated in that case that it was necessary to constitute a breach of the condition of his bond to show that he had solicited the custom of his patients. The covenant here is just as absolute as in that case. It is that the defendants will not carry on the business, etc., within the district. It cannot be doubted that sending his wagon and an agent daily within the district, supplying the inhabitants and receiving their orders for further supplies, would be, if carried on to a sufficient extent to constitute a business, a breach of that covenant. What excuse is it to say that these acts were done at the request of the customers?

The object of the covenant was to secure the withdrawal of the defendants from the business in order that the trade which would have gone to them, had they continued, should go to the plaintiffs. If the defendants continued their business and supplied their former customers or others in the district, the damage to the plaintiffs is the same whether the defendants sought the customers or they voluntarily came to the defendants. If the defendants declined to do the business, as their covenant bound them to do, this trade might have gone to the plaintiffs.

The case of *Turner* v. *Evans* (2 El. & Bl., 512) is much relied upon by the defendants' counsel to sustain the proposition that to constitute a breach the orders must have been solicited by the defendants.

In that case, the defendant sold the good-will of his business at Carnarvon, and contracted with the purchaser not to carry on the business of a wine merchant there. He set up the business at another place, but had agents at Carnarvon who received orders for wine, which he executed. The fact was in the case that these agents solicited orders, and that fact was commented upon, but was not essential to the decision. The essential ground was, that the defendant supplied wine so systematically within the district as to have made a business of it. The reasoning of the case shows that if he had had an agent within the district, who received orders, even without solicitation, which the defendant supplied, the result would have been the same, and the injury to the plaintiff the same; and that it made no difference whether the wine was supplied from stores within or without the district. In discussing the question of fact, Lord CAMPBELL remarks, that if, to oblige an old customer, he should now and then sell him some wine, that would be no breach, for it would not be carrying on a business, and the same remark would apply to the present case. If, once in a while, to oblige an old customer, the defendants had sent him a piece of meat, the case would be analogous. But that is vastly different from systematically sending an agent every

day to the houses of his old customers in the district and receiving orders and supplying them.

The true question in the case was, whether the defendants had done these acts systematically, and for profit, to an extent sufficient to constitute the carrying on of a business within the district. If so, it matters not at whose solicitation the dealings were inaugurated. But the case was not disposed of or submitted to the jury on any such question. The ground upon which it was disposed of is, we think, untenable, and the judgment should therefore be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.