PULLMAN'S PALACE-CAR CO. v. MISSOURI, K. & T. RY. CO. et al.

(Circuit Court, D. Kansas. January 5, 1893.)

RAILROADS—CONTRACT WITH SLEEPING-CAR COMPANY—INJUNCTION.

A contract was made between several railroads, including the Kansas R. Co. and the Pacific R. Co. and a car company, by which the car company agreed to furnish the sleeping and drawing-room cars for the several lines, provided that the car company should have the exclusive right to furnish these cars for a term of 15 years; and provision was made by which the railroad companies might provide three fourths of the capital required for the cars, and become joint owners with the car company therein. The contract also provided for the keeping of accounts by the car company, for their examination and adjustment, and for the payment of a proportion of the earnings of the cars to the railway companies. The same person was president of all the railway companies, and the contract was executed by him. When the Kansas R. Co. proceeded to make arrangements for obtaining an equipment of sleeping and drawing-room cars from another car company, the contracting car company filed a bill to enjoin it from doing so. On the hearing of a motion for a temporary injunction, it appeared that the whole of the earnings of the equipment had been paid to the Pacific R. Co., and no part had been paid to the Kansas R. Co., while the latter had been charged mileage at the maximum rate for the car service; that no accounting had taken place with the Kansas R. Co., but only with the Pacific R. Co.; that the whole capital therefor had been furnished by the Pacific R. Co.; and that the car company treated the latter company as its sole joint owner. It also appeared that, when the Pacific R. Co. was required to list to the Kansas R. Co.'s receivers all the property of the latter company which the former had in its possession as its lessee, it did not include therein any interest in the sleeping-car equipment. *Held* that, as it appeared from the facts that the contract had never been acted upon by the Kansas R. Co., and that it had been excluded from all benefit thereunder by the joint action of the car company and the Pacific R. Co., a preliminary injunction should not issue.

In Equity. Suit by the Pullman's Palace-Car Company against the Missouri, Kansas & Texas Railway Company, the Missouri Pacific Railway Company, the International & Great Northern Railroad Company, and the St. Louis, Iron Mountain & Southern Railway Company to enjoin the Missouri, Kansas & Texas Railway Company from using, on its line of railroad, sleeping or drawing-room cars belonging to any person or corporation other than the plaintiff. On motion for a preliminary injunction. Denied.

Rossington, Smith & Dallas, (Edward S. Isham and John S. Runnells, of counsel,) for plaintiff.

T. N. Sedgwick and Warner, Dean & Hagerman, (James Hagerman, Frederick S. Winston, and James F. Meagher, of counsel,) for defendant Missouri, K. & T. Ry. Co.

Alex. G. Cochran, for Missouri Pac. Ry. Co., International & G. N. R. Co., and St. Louis, I. M. & S. Ry. Co.

RINER, District Judge. This is an application for temporary injunction. The bill was filed in this court on the 13th day of December, 1892, and on that day a temporary restraining order was granted in the cause until the application for a temporary injunction could be heard, which was set down for hearing, upon notice to the defendants, on the 20th day of December, 1892, and on that day the restraining order was continued in full force and effect until the further order of the court. The bill of complaint, after properly setting forth the incorporation and citizenship of the complainant and the several defendants, alleges that in 1886 the several defendants, being the owners of lines of railway which they were at that time engaged in operating, entered into a contract in writing with the complainant, in which contract the several defendants in this cause were parties of the one part, and the Pullman Company party of the other part, which contract provided (among other things) that the complainant would furnish sleeping and drawing-room cars, to be used by the defendants for the transportation of passengers over their lines of railway, and that the cars which the Pullman Company was to furnish should be in part certain 48 cars (which cars should be equal in character and finish to the cars of complainant used upon competing lines) then operated on the lines of the railway companies, defendants herein, specifically named in said contract, and that, in addition to the 48 cars mentioned, the Pullman Company should, from time to time thereafter, furnish such additional cars, properly equipped and acceptable to the railway companies, as might be needed to meet the ordinary requirements of travel; that, in consideration of the use of said cars so to be furnished by the Pullman Company, the railway companies agreed to haul the same on their own lines of road, and on all other roads which they then controlled or might thereafter control, by ownership, lease, or otherwise, on such trains, and in such manner, as should be, in the judgment of the general manager or general superintendent of the railway companies, best adapted to accommodate passengers on said railways, and that the Pullman Company should have the exclusive right, for a term of 15 years from the 1st day of November, 1886, to furnish for the use of the railway companies such sleeping and drawing-room cars as might be required on all passenger trains of the railway companies run over their entire lines of railway, and on all roads which they controlled, or might thereafter control, by ownership, lease, or otherwise. It is further alleged in the bill that by the sixteenth section of said contract it was provided as follows:

"It is mutually agreed between the parties hereto that the railway companies shall have the option to determine whether they will provide three fourths of all the capital required for furnishing the equipment which may

be put upon the roads of the railway companies under this contract, and, upon the payment of the same to the Pullman Company, become a joint owner with the Pullman Company in the said equipment, and receive thereupon three fourths of the gains or profits, and bear the same proportion of all the losses, arising from the business of operating the said cars furnished under this contract, the Pullman Company to retain the control and management: provided, that such options shall be exercised, if at all, and notice thereof communicated to the Pullman Company, in writing, within five years from the first day of November, 1886. For the purposes of the options hereinbefore last provided, it is hereby mutually agreed that, for the three-quarter interest in the forty-eight cars now furnished under this contract, the railway companies shall pay to the Pullman Company an amount to be mutually agreed upon; and, for such additional cars and equipment as may be subsequently assigned to and accepted by the railway companies, the said railway companies shall pay to the Pullman Company three fourths of the actual cost of building said cars and equipment, with ten (10) per centum added thereto. And, in the event of the railway companies exercising their option to become a part owner of said cars and equipment, it is hereby mutually agreed, for the purpose of ascertaining the profit to be divided between the Pullman Company and the railway companies under this contract, that the operating expenses, which shall be held to include maintenance of said sleeping-car equipments, repairs, supplies, and all expenses and losses of administration, and superintendence, and cost of insurance of the joint property, and other expenses resulting from, or in any way connected with, the operation of said cars, including judgments or payments for injury to employes or passengers or loss of their property for which the Pullman Company, as managers, may be responsible, shall be deducted from the gross receipts, and the remainder thereof shall be divided in proportion to ownership in such cars and equipments; settlements to be made monthly."

It is also alleged that the contract provided that, for the use of the temporary cars to be furnished to defendant for special or unusual demands of travel from time to time, the Pullman Company was to receive the earnings from such cars, and keep them in repair at its own expense, and that it would not be required to account for or pay to the railway companies any profits arising from the operating of such temporary cars. It is alleged that the contract also contained other provisions concerning the care and repairs of the cars, and equipment thereof, and concerning the compensation and profit to be derived by the complainant from the use of said cars. It is further alleged in the bill that on the 1st day of November, 1886, the date of the original contract, a further and supplemental contract was entered into by and between the railway companies, defendants herein, of the one part, and the Pullman Company, complainant herein, of the other part, which supplemental contract recited that the railway companies had elected to exercise the option provided in the sixteenth section of the original contract, and that the railway companies thereby became joint owners with the Pullman Company in the 48 cars known as "Association Cars," and in their furniture and linen, and that the railway companies should receive three fourths of all the gains or profits, and bear three fourths of all the losses, arising from the business of operating the association cars under the terms and conditions of the original contract; that the Pullman Company should keep full and complete books of account, showing all expenses and receipts, losses and profits, arising from the operation of the association cars; that it was understood and agreed that so much of

the general expenses of the Pullman Company should be added to the specific expenses of the association cars as the number of association cars should bear to the whole number of cars run by the Pullman Company on all the lines operated by it; that the books and accounts should be balanced as often as once a month, and the profits and losses of the business ascertained, and that whatever might be shown thereby should be borne by, or paid to, the party entitled thereto before the end of the month following.

It is further alleged in the bill that, from the time of making the said original and supplemental contracts until the date of the filing of the bill, the defendants and complainant had proceeded in the execution of said contract, and the said association cars had been used and employed on the railroad of said railway companies, as provided in the original and supplemental contracts, and that the complainant has performed, on its part, all the several provisions and agreements entered into by it in said contract, and will continue so to do.

It is further alleged in the bill that the Missouri, Kansas & Texas Railway Company, one of the defendants herein, has indicated its purpose to repudiate its contract so made, in connection with the other railway companies, with the complainant, and has denied that said contracts were in force and binding between it and the other railway companies and the complainant; and it has served a notice upon the complainant that after the 15th day of December, 1892, it would cease to perform the said contract, and cease to operate the said association cars, or the cars of complainant, over its lines of railroad; and that it had engaged, by contract, for use upon its lines of road on and after the said 15th day of December, 1892, other and different sleeping and drawing-room cars than those of complainant, known as the cars of the Wagner Palace-Car Company. It is further alleged that the refusal of the Missouri, Kansas & Texas Railway Company to operate said cars upon its line of road is a violation of the provisions of its contract with the complainant, and that the violation thereof, in the manner proposed by the Missouri, Kansas & Texas Railway Company, would result in great and irreparable damage to the complainant. Then follows the prayer for a temporary injunction, and for a perpetual injunction upon final hearing. In addition to the verified bill of complaint, complainant filed, in support of its application, the affidavit of John S. Runnels.

On the 20th day of December, 1892, the day on which the application for a temporary injunction was set down for hearing, the Missouri, Kansas & Texas Railway Company, one of the defendants herein, filed its answer, under oath, admitting that certain writings were signed in the name of each of the defendants by Jay Gould, president of each, and by complainant herein, on the date alleged in the bill. It alleges that, at the time said writings were signed, they were not, and never have been at any time since, and are not now, binding contracts upon the part of the Missouri, Kansas & Texas Railway Company. It denies that it ever paid to the complainant, or any other person, firm, or corporation, any part or por-

tion of the value of the cars mentioned in the bill of complaint, and denies that it became a joint owner with complainant or with any other person, firm, or corporation of said cars. It denies that it became jointly interested with complainant in the business to be carried on, and the profits and losses resulting from the operation of said cars, as alleged in the bill. It denies that it has at any time proceeded in the execution of the writings or contracts as alleged in the bill. It denies that the cars mentioned therein, or any of them, are now running and being used upon the lines of railway of the Missouri, Kansas & Texas Railway Company. Denies that the complainant has kept and performed on its part the several provisions and agreements entered into by it in said writings, as alleged in the bill.

It admits that it has notified the complainant that it would refuse to be bound by the terms of said agreements, and that it has denied that the contracts were in force and binding upon it, and that it has given notice that it would cease to operate the cars of complainant after the 15th day of December, 1892. It admits that it has entered into a contract with the Wagner Palace-Car Company for use on its lines of railway, on and after the 15th day of December, 1892, of other and different sleeping, parlor, and drawing-room cars than those of the complainant. It denies that the use of other sleeping, parlor, and drawing-room cars on its line than those furnished by complainant will cause great and irreparable damage to the complainant. It denies that any of the cars of complainant used upon its line of railway since the rate of the contracts, mentioned in the bill of complaint, have been so run over and upon its lines of railway under the terms and provisions of the contract set out in the bill. On the contrary, it alleges that, of the moneys mentioned in said supplemental agreement to be paid as a purchase price of the interest and ownership in said equipment mentioned in the bill of complaint, no part or portion thereof was ever paid by the defendant the Missouri, Kansas & Texas Railway Company, and that no part thereof was ever charged to the Missouri, Kansas & Texas Railway Company, and that no demand for the repayment of any portion or part of the purchase price of said cars was ever made upon the Missouri, Kansas & Texas Railway Company, upon information and belief that the purchase price of said cars was paid by the Missouri Pacific Railway Company, one of the defendants herein.

It is further stated in the answer that on the 1st of November, 1888, H. C. Cross and George A. Eddy were appointed receivers of all and singular the property, assets, and effects of the Missouri, Kansas & Texas Railway Company, and that they qualified and took possession of said defendant's railroad and all of its property, managed and operated the business and affairs thereof until the 1st of July, 1891, when the same was turned over by the receivers to this defendant, and that, during the entire time that its lines of road were operated by the receivers, no sleeping cars were furnished to it, or to the receivers, under the terms and provisions of the agreement set out in the bill, but, on the contrary, during all of that time the cars

of complainant were run on said road under an arrangement whereby the complainant charged the defendant or the receivers the sum of three cents per mile for each and every mile each and every sleeping car was run or operated on its lines of railway during said period, and that the sums so charged by the complainant to the defendant or its receivers were paid by the defendant or its receivers to the complainant, and that neither the receivers nor this defendant ever accepted, agreed upon, or received any of the benefits and advantages mentioned, set out, and described in the contracts mentioned in the bill of complaint, but, on the contrary, the receivers were wholly unaware of the existence of such contracts until long after their appointment, and long after they had commenced the operation of said road, and had paid the bills from month to month to complainant at the rate above specified; and that since the road was turned over to the defendant, on the 1st day of July, 1891, the defendant has continued to pay the prices above set forth, except certain sums which have been withheld during the year 1892, for the reason that the cars furnished were not satisfactory.

Further answering, defendant alleges that the sleeping cars furnished by the complainant were old, worn out, undesirable, and unattractive in appearance, and were not equal in character and finish to the sleeping and drawing-room cars of the complainant used upon competing lines, and that the same were never furnished to this defendant under the contract mentioned in the bill of complaint, and the defendant did not claim, or does not now claim, ownership of any kind, name, or nature in and to said cars; and denies that it ever operated said cars other than by reason of a verbal understanding and arrangement with the complainant, by the terms of which the complainant was to furnish and supply the defendant with sufficient cars to accommodate its business, in return for which, and in consideration for which, this defendant was to pay, and did pay, three cents for each and every mile run by each and every car furnished by complainant for use upon the line and lines of railway of said defendant; that by the use of the cars of the Wagner Company the defendant, under its contract with that company, can offer and supply to the public better sleeping, parlor, and drawing-room cars by the substitution of gas for oil for light, and that the cars of the Wagner Company are safer and cleaner than those furnished by complainant; that the use of the Wagner cars will not in any way affect or prejudice through travel between remote points; that such through travel can be carried on with equal facilities, whether the cars used by the defendant are Wagner cars or Pullman cars; and that the substitution of the Wagner cars for the Pullman cars will not break up, or in any wise affect, through travel between remote points. It is further alleged in the answer that the contracts mentioned in the bill of complaint between the complainant and the defendants constitute a partnership arrangement respecting certain cars, and that such arrangement would be ultra vires this defendant and the other railroad companies, parties to said alleged agreement. Further answering, the defendant alleges that the complainant has stated

to this defendant that the said association cars mentioned in the bill of complaint were owned by the Missouri Pacific Railway Company. It is further alleged that, if the contracts are valid, and complainant has any remedy, it is at law.

It is further alleged that at the date of the contract mentioned in the bill the complainant knew that the Missouri, Kansas & Texas Railway Company was leased to and operated by the Missouri Pacific Railway Company as a part of its system, and that said last-named company fully controlled the operation of this defendant, and was in receipt of its revenue of every kind and nature, and that this defendant had no power to enter into any such partnership scheme as that contemplated by the contract mentioned in the bill; that it was beyond the corporate power of the defendant to enter into such contract, and that neither the president nor board of directors of this defendant had any power to enter into such alleged contracts, all of which was well known, or should have been known, to the complainant.

It is further alleged that, by the decree of this court entered in the cause of the Mercantile Trust Company v. Missouri, Kansas & Texas Railway Company and the Missouri Pacific Railway Company, it was ordered, adjudged, and decreed, among other things, that the lease of the property of this defendant to the Missouri Pacific Railway Company of the 1st of December, 1880, had ceased and determined. In support of the answer filed by the Missouri, Kansas & Texas Railway Company it has filed the affidavits of George A. Eddy, H. C. Cross, Thomas C. Purdy, M. Sweeney, George J. Pollock, Robert Walker, Joseph M. Bryson, J. J. Frey, J. H. Hill, John A. Spoor, and George F. Sharitt.

The application was heard upon the bill, answer, and the several affidavits filed in the cause. The questions presented were argued by counsel with distinguished ability. Since the argument I have carefully examined the pleadings, the affidavits, and also the briefs of counsel, together with the numerous authorities cited. For the purpose of disposing of the question now before the court, viz. whether or not a temporary injunction should issue in this case, I do not consider it necessary to decide whether the contracts mentioned in the bill were ultra vires, or, if not, whether they are contracts of which a court of equity may and ought to compel specific performance, for the reason that I think it is clearly shown, by the affidavits filed in support of the answer and the correspondence attached thereto, that these contracts have not been considered by any of the parties to this litigation as existing contracts between complainant and the defendant the Missouri, Kansas & Texas Railway Company. It may be said that this statement is too broad, for the reason that the Missouri Pacific Railway Company has not yet answered in the case, nor did it make any showing by affidavits upon the application for the temporary injunction, (although served with notice.) The answer of the Missouri, Kansas & Texas Railway Company, however, mentions the interest of the Missouri Pacific in these contracts, and the Missouri Pacific, although represented by counsel, who took part in the argument, did not see fit

to deny the allegations of the answer as to its interests; hence, we think, for the purpose of the question now before the court, the allegations of the answer of the Missouri, Kansas & Texas Railway Company must be taken as true, so far as it relates to the interest of the Missouri Pacific in the contracts mentioned in the bill.

While I have no doubt of the power of a court of equity, as stated by Mr. Justice Brewer, "to grasp with strong hand every corporation, and compel it to perform its contract of every nature, and do justice to every individual," yet what are the facts in this case as shown by the answer and the affidavits on file? Although the contract provides that the railway companies may elect to furnish three fourths of the capital required for furnishing the equipment (viz. the association cars) which may be put upon the roads of the companies under the contract, and the bill alleges that they did so elect, yet the affidavits show that the three fourths of the capital required for furnishing the equipment under the contract was all furnished and paid by the Missouri Pacific Railway Company; that no part thereof was ever paid by, or charged to, the Missouri, Kansas & Texas Railway Company. The contract also provides that the railway companies should receive three fourths of all gains and profits, and should bear the same proportion of all the losses, arising from the business of operating the cars furnished under the contract, while it is shown by the affidavits that, ever since these contracts were signed, the Missouri, Kansas & Texas Railway Company has been charged three cents for each and every mile for each and every car run over its line, which sum is shown to be a maximum charge.

It was further provided by the contract that the Pullman Company should keep full and complete books of account, showing all expenses, receipts, losses, and profits arising from the operation of said association cars, and that said books and accounts should be balanced as often as once a month, and the profits and losses of said business ascertained, and whatever should be shown thereby should be borne by, or paid to, the party entitled thereto before the end of the month following.

It is shown by the answer and the affidavits that, from the date of these contracts, no such accounting as required by the contract was ever had between the complainant and the defendant the Missouri, Kansas & Texas Railway Company; that the Missouri, Kansas & Texas Railway Company was never called upon by the complainant to bear any proportion of the losses, if there were losses, nor has it ever been paid its proportion of the profits, if there were profits. Upon the contrary, when requested by the receivers, appointed by this court, to furnish them a statement of earnings and expenses of these cars, Mr. H. T. Wickes, second vice president of the complainant, made the following reply, by letter:

"Second Vice President's Office, Chicago, July 3, 1889.

"George A. Eddy, Esq.. Receiver M., K. & T. Ry., Sedalia, Mo.—Dear Sir: I am in receipt of your favor of the 28th ultimo, requesting the state-

ments of amounts paid by this company for account of the 12 cars assigned to the Missouri, Kansas and Texas Ry. In reply thereto I beg to say that we would prefer not to send the statements, but if you should come or send an authorized representative here, and express a demand to see these statements, we shall be glad to comply with same.

"Very truly yours,                    H. T. Wickes, Second Vice Pres."

It is also shown by the answer and affidavits filed by the Missouri, Kansas & Texas Railway Company that the decree appointing Mr. Eddy and Mr. Cross receivers required the Missouri Pacific Railway Company which then had possession of all the property of the Missouri, Kansas & Texas Railway Company, under a lease, to list to the receivers all of the property, of every kind and nature, of the last-named company, and that the Missouri Pacific Railway Company made a list pursuant to the requirements of the decree, and turned over all of the property of the Missouri, Kansas & Texas Railway Company to said receivers; and that in making said list it did not include therein any interest whatever of the Missouri, Kansas & Texas Railway Company in and to the said association cars, or any part thereof, or interest therein, showing thereby that it did not consider the contract in force so far as it applied to the Missouri, Kansas & Texas Railway Company. If anything further is necessary to show how the Missouri Pacific considered this contract, the language of Mr. Clark, its vice president, in reply to an inquiry made by the receivers in relation thereto, is, I think, entirely sufficient. He says:

"Before specifically replying to this letter, I have to ask that you will kindly inform me what you mean by the words 'statement in settlement of our interest.' Please inform me what interest you claim, and as to the character of the statement which you expect from the Pullman Company."

Upon the question whether or not the complainant considered this contract an existing contract, so far as it relates to the Missouri, Kansas & Texas Railway Company, a letter under the date February 5, 1889, from Mr. Wickes, second vice president, addressed to George A. Eddy, receiver, may throw some light. The letter is as follows:

"Pullman Palace-Car Company.

"Second Vice President's Office. H. T. Wickes, Second Vice Pres.

"Subject: Sleeping-Car Equipment.

"Chicago, Feb. 5, 1889.

"George A. Eddy, Receiver M., K. & T. Ry.—Dear Sir: On my return from the east, I find your letter of the 31st ultimo, regarding the condition of some Pullman cars running over your line. On inquiry I find the majority of these cars are those assigned to the Missouri Pacific Railway, in which that company is joint owner with the Pullman Company, and are the same cars that were operated in this service before the M., K. & T. was placed in the hands of a receiver. I have given instructions to our general superintendent to have such cars as may not be satisfactory replaced at the earliest possible moment, which I trust will be satisfactory.

"Yours, truly,                    H. T. Wickes, Second Vice Pres."

This letter clearly tends to show that at the date of the letter the complainant did not consider that the Missouri, Kansas & Texas Railway Company had any interest in, or was bound by the terms and provisions of, the contract. I think this is the only fair con-

struction that can be given the language used by Mr. Wickes when he says: "I find the majority of these cars are assigned to the Missouri Pacific Railway Company, in which that company is joint owner with the Pullman Company." I think these letters and the affidavits clearly show that the contract, so far as it applies to the Missouri, Kansas & Texas Railway Company, has never been acted upon, either by that company or the complainant; that although the contract was signed as admitted in the answer, yet the defendant the Missouri, Kansas & Texas Railway Company has been continually excluded therefrom by the joint action of the complainant and the defendant the Missouri Pacific Railway Company, and, upon the showing now before the court, (assuming the contract to be a valid contract,) complainant has never complied, or attempted to comply, with the requirements of the contracts set out in the bill of complaint. True, it has furnished cars for the use of this defendant; not, however, in the manner provided by the contract, but at a maximum rate charged therefor. It has never accounted, nor offered to account, for the profits arising from the business. It has never called upon the defendant to pay its proportion of the losses, nor in any other way has it treated this contract as an existing contract, so far as this defendant is concerned, but, on the contrary, when asked for a statement, it declined to make it, and the same is true of the Missouri Pacific, the other party to the contract.

While it is true that, if the facts were as alleged in the bill,—that the contract up to this time had been in the continuous and peaceful course of performance by the parties, and had been recognized and treated by the parties thereto as an existing contract,—the court would not permit either party to declare the contract void, and proceed without process and without settlement to violate its provisions, yet, upon the other hand, it would certainly be a very harsh rule to say to this defendant, under the facts now before the court, "While it is true you have been excluded from the provisions of this contract, or any participation in the business conducted thereunder, and have been charged the maximum rate for the cars used by you; that no accounting has been made to you of the business done, as provided in the contract; and that, notwithstanding you have requested a statement and accounting, the same has been refused,—yet, because your name is signed to the contract, you shall not make another, although the equipment furnished is inferior, and other provisions of the contract have not been complied with;" and that, too, when one of the other parties to the contract is operating a competing line of railroad in active competition with the defendant filing the answer.

This, it seems to me, would be doing great injustice to this defendant; and, without passing upon any of the other questions urged by counsel, my own view is that, upon the showing now before the court, the application for a temporary injunction should be denied, and the restraining order heretofore issued set aside.