---

### BROADBROOKS et al. v. TOLLES.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. CONTRACTS—TRADE RESTRICTIONS—VALIDITY.

A provision in a contract for the sale of the assets and good will of a business by which defendants agreed that they would not, directly or indirectly, engage in a similar business within a radius of 25 miles of the village where the business transferred was located for 25 years from the date of the sale, was valid and enforceable.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 554–569.]

2. DAMAGES—STIPULATED DAMAGES.

Where a contract for the sale of a business provided that the sellers should not again engage in a similar business for a specified time, and declared that on a breach of such contract the buyers should be entitled to recover $5,000 stipulated damages, they were entitled to recover such damages in case of a breach, provided the sum agreed on was not manifestly disproportionate to the actual damages accruing therefrom.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 170–175.]

3. CONTRACTS—CONSTRUCTION.

Defendant, in partnership with another, operated a lumber yard in which lumber, sewer pipe, shingles, brick, plaster, moldings,. veranda stock, etc., were sold, and defendant alone conducted a hardware business in the same city, in connection. with which he sold doors, sash, and inside wood-

work; it being the custom whenever the lumber business had orders for sash, etc.. to purchase from defendant. The firm sold the lumber business to plaintiff, the agreement including "doors, sash, and inside finished work," but the inventory on which the sale was based contained no such property. *Held,* that a provision of the contract that the vendors would not again engage in the lumber, cement, or similar business did not prohibit defendant from continuing to sell sash, doors, etc., in connection with his hardware business.

4. DAMAGES—STIPULATED DAMAGES—EXTENT OF BREACH OF CONTRACT.

A single sale within three years of three veranda columns by defendant, though a portion of the business that was transferred to plaintiffs, did not constitute a breach of the contract, entitling plaintiffs to recover $5,000 stipulated damages.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, § 182.]

Exceptions from Trial Term, Wyoming County.

Action by George C. Broadbrooks and another against Edward E. Tolles. A nonsuit was ordered at the close of plaintiffs' case, and plaintiffs' exceptions were ordered heard in the first instance at the Appellate Division. Exceptions overruled. Judgment ordered for defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

O. P. Stockwell and Frank W. Brown, for plaintiffs.
Brainard Tolles and James E. Norton, for defendant.

SPRING, J. Prior to November 20, 1902, the defendant and one Florence Vickery, as copartners under the style of the West Avenue Mills Company, carried on a lumber yard in the village of Attica in which was kept for sale hemlock and pine lumber, sewer pipe, shingles, brick, plaster, moldings, veranda stock, and kindred articles and materials. The plaintiffs for several years conducted a rival business in the same place. On the 20th of November, 1902, the plaintiffs purchased the stock, business, and good will of the said West Avenue Mills Company. In the written agreement of transfer the said defendant and his copartner sold and delivered to the plaintiffs the "stock of lumber, finished and unfinished, sewer pipe, lime, cement, wall plaster, lath, shingles, doors, sash, and inside finished work, together with the good will and business of the said parties of the first part in the carrying on of such lumber, cement, sewer pipe, and wall plaster business, as aforesaid. And the said parties of the first part, in consideration of the moneys hereinbefore expressed, do jointly and severally stipulate and agree that they, or either of them, will not engage, directly or indirectly, in said lumber, cement, or similar business within the radius of twenty-five miles of the village of Attica, in said county of Wyoming, and state of New York, for the period of twenty-five years from the date hereof; and said parties of the first part, and each of them, in case of a violation of the last above stated covenant, jointly and severally agree to pay unto the parties of the second part, their successors or assigns, the sum of five thousand dollars as stipulated damages for such violation. The property and effects hereby sold, assigned, and transferred are more particularly mentioned in a written inventory thereof, made by the parties hereto; reference thereto being had as forming a part hereof, and the particular business hereby sold."

This action is brought against the defendant to recover the stipulated damages, charging that he has violated the prohibition in the agreement by engaging in the village of Attica in the same kind of business transferred to the plaintiffs. The purpose of the provision in the agreement precluding the defendant and his copartner from carrying on the lumber yard was to get rid of a competitor within the prescribed territory. Restrictive trade stipulations or covenants of this character, although not looked upon with favor, have frequently been upheld. Sander et al. v. Hoffman et al., 64 N. Y. 249; Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Cummings v. Union Blue Stone Co., 164 N. Y. 401–404, 58 N. E. 525, 52 L. R. A. 262, 79 Am. St. Rep. 655; N. Y. Bank Note Co. v. Hamilton B. N. Co., 180 N. Y. 280–293 et seq., 73 N. E. 48.

If there is a breach of the covenant or stipulation, the vendee may recover his actual damages, or, if they have been stipulated by the parties, the sum thus agreed upon may ordinarily be recovered as liquidated damages (Ward v. Hudson River Building Company, 125 N. Y. 230, 26 N. E. 256), unless the sum specified is manifestly disproportionate to any damages accruing from the breach of the agreement (Curtiss v. Van Bergh, 161 N. Y. 47–52, 55 N. E. 398; Hicks v. Monarch Cycle Mfg. Co., 176 N. Y. 111–113 et seq., 69 N. E. 127; Cæsar v. Rubinson, 174 N. Y. 492–496 et seq., 67 N. E. 58). It will be unnecessary to consider this phase of the case in the view we take of the restraining clause and the sales made by the defendant, which are claimed to be violative of it. The plaintiffs were required during the pendency of the action to furnish a bill of particulars of the sales which they expected to prove. The defendant at the trial conceded all of the sales set out in the bill of particulars, except a quantity of hemlock lumber, and no proof was offered as to that item. These sales extended from June, 1903, into September, 1904, and consisted of sash, doors, one sale of blinds, two fancy windows at separate sales, and one sale of three veranda columns. The only substantial infraction, if any there be, is in the sales of the sash and doors, and which the defendant has made openly and frequently, claiming that they are not within the prohibitive clause of the agreement. The enumeration of the property sold contained in the agreement includes "doors, sash, and inside finished work," and the design obviously was to transfer to the plaintiffs whatever the copartnership possessed; hence the general language used. The inventory which accompanied the sale does not disclose any sash or doors or blinds. The proof shows that the firm kept none of these goods in stock. The defendant was engaged in the hardware business in the village of Attica, and in connection with that business dealt in sash, doors, and blinds. If the West Avenue Mills Company needed any of these supplies to enable it to make out a bill for a building, it purchased them of the defendant at his hardware store. The copartnership did not deal in these articles, and the occasional sales of them it made were incidental to its regular business, and only to aid it in selling a quantity of the supplies which composed its general stock and traffic. The defendant did not sell his hardware stock to the plaintiffs, and did not suspend that business after the discontinuance

of the lumber business, but has since carried it on as before.  His stock of sash, doors, and blinds was not purchased by the plaintiffs, and it was not expected that he would in any way cease his personal business. Of course, he could not enlarge the scope of his hardware trade by taking on a lumber yard, or by keeping sewer pipe, or carrying on business of the same general character as that sold to the plaintiffs. The restrictive stipulation must, however, receive a reasonable construction, keeping in view its purpose and in the light of the surrounding circumstances; and in that view these sales of sash, doors, and blinds by the defendant at his store the same as before the transfer to the plaintiffs did not violate the stipulation in the agreement.  The language of the contract tends to sustain this construction.  The vendors agree that they will not engage in "said lumber, cement, or similar business"; and again, "that the property and effects hereby sold * * * are more particularly mentioned in the inventory; * * * reference thereto being had as forming a part hereof, and the particular business hereby sold."

We gather from the detailed inventory, rather than from the language of the contract, providing what shall pass by the transfer, the range of the copartnership business; but it appears more satisfactorily and without controversy from the evidence of the witnesses.  The language employed, to be sure, is comprehensive enough to include sash, doors, and blinds, if the inventory showed that they were on hand at the time of the sale, or if that class of property had been kept in stock and composed a part of the effects of the West Avenue Mills Company.  The contrary appears, and we therefore conclude that the sales of these goods do not transgress the restrictive stipulation.  The evidence does show a single sale of three veranda columns, and they are among the class of wood manufacture contained in the inventory. They are not the kind of articles which are usually found in a hardware store.  An isolated sale in three years can hardly be "engaging in business," within the spirit of the stipulation.  Breck v. Ringler, 129 N. Y. 656, 29 N. E. 833; Greenfield v. Gilman et al., 140 N. Y. 168, 35 N. E. 435; Sander et al. v. Hoffman et al., 64 N. Y. 248.

The plaintiffs were seeking to get rid of a competitor in business. They paid about $5,400 for the stock of goods which they purchased, and the sum of $5,000 as stipulated damages imposed upon the defendant in case he started anew in the same kind of business was a large penalty in proportion to the size of the business transferred.  It could not have been within the contemplation of the parties that if one sale was made in three years that it was such an invasion of this stipulation that the defendant forfeited the entire sum agreed upon.  The sum designated as liquidated damages denotes that it was the expectation of the parties that the defendant should not engage in business in competition with the plaintiffs of the same general kind as that which had been carried on by the vendor.

The plaintiffs' exceptions should be overruled, with costs and disbursements of this appeal, and judgment ordered for the defendant on the nonsuit, with costs.  So ordered.  All concur.