### FRIES v. PARR et al.

#### (Supreme Court, Equity Term, Erie County. October, 1912.)

1. CONTRACTS (§ 47*)—CONSIDERATION—NECESSITY.

   A promise by a seller of a business not to engage in a similar business
   for a specified term within specified territory will not be enforced in
   equity at the suit of the buyer, where there was no consideration for the
   purchase of the business and the promise.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 220, 221, 256–
   258; Dec. Dig. § 47.*]

2. INJUNCTION (§ 61*) — CONTRACT — ENFORCEMENT — CONSIDERATION — ADE-
   QUACY.

   A bill of sale of the business of manufacturing and selling hardware
   specialties, which stipulates that the seller will not engage or compete
   in the manufacture or sale of hardware specialties in the city for 10
   years, and a contemporaneous contract requiring the buyer to hire the
   seller for one year for a specified compensation, if construed to constitute
   one agreement, so that the sole consideration of the seller's promise is
   the buyer's promise to employ the seller for one year, will not be enforced
   by injunction at the suit of the buyer, seeking to restrain the seller from
   manufacturing articles, since the agreement to employ for a year is not

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

adequate consideration for the agreement not to engage in business for 10 years, since a contract which is unfair and oppressive to one of the parties thereto will not be enforced against him by injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 120–123; Dec. Dig. § 61.*]

3. CONTRACTS (§ 117*)—IN RESTRAINT OF TRADE—ENFORCEMENT.

A contract whereby a seller of a business agrees not to engage in similar business is looked on by the courts with disfavor, and is not enforceable unless the restrictions are limited as to time and territory, and it is necessary to uphold the contract in order that the buyer of a growing business, acquiring the good will for a sufficient consideration, may obtain the benefit of his purchase.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 554–569; Dec. Dig. § 117.*]

4. MASTER AND SERVANT (§ 70*)—CONTRACTS OF EMPLOYMENT—CONSTRUCTION—"CASH NET PROFITS."

A buyer of a business, who contracts to employ the seller for a year at a weekly salary, payable out of the profits of the business, and who agrees that at the end of each six months' continuous employment a balance is to be struck, and a bonus paid of one-half of the "actual cash net profits" accruing from the business, must every six months strike a balance. ascertain the profits, and advise the seller thereof, and pay half of the profits: the term "cash net profits" being used in the sense of net profits at their actual cash valuation, whether invested in stock, machinery, or outstanding accounts.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82–86; Dec. Dig. § 70.*]

5. INJUNCTION (§ 61*)—CONTRACTS ENFORCEABLE—BREACH OF CONTRACT.

A buyer of a business, who breaches his contract, may not sue to enjoin the seller from breaching his covenant not to engage in similar business during a specified period within specified territory.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 120–123; Dec. Dig. § 61.*]

6. INJUNCTION (§ 113*)—CONTRACTS ENFORCEABLE—LACHES.

Where a buyer of a business knew during two years that the seller, who contracted not to engage in similar business for ten years, engaged in such business and built up a profitable business, and did not protest against it, he was barred by laches from suing in equity to restrain the seller from violating his covenant.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 198–201; Dec. Dig. § 113.*]

Action by Arthur G. Fries against Frank Parr and another. Judgment of dismissal.

A. Glenni Bartholomew, of Buffalo, for plaintiff.
Frederick O. Bissell, of Buffalo, for defendants.

WHEELER, J. The defendants had, in a small way, manufactured some hardware specialties known as saw sets and saw tools, and had some unfilled orders from third parties for these articles. Frank Parr, one of the defendants, came into contact with the plaintiff, and had some preliminary negotiations with him looking toward the plaintiff advancing sufficient money to buy material and machines for making and marketing the articles in question. These negotiations resulted in the parties making the following agreement:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Bill of Sale.

"Agreement made and entered into this 1st day of April, 1907, by and between Edith E. Parr and Frank Parr, parties of the first part, and Arthur G. Fries, party of the second part, all of the city of Buffalo, N. Y., witnesseth:

"Whereas, .the parties of the first part have heretofore conducted a business for the manufacture and sale of tools and hardware specialties in the city of Buffalo, under the assumed name of Monarch Hardware Co.;

"And whereas, said parties of the first part are desirous of disposing of their said business:

"Now, therefore, we, the said parties of the first part, for and in consideration of the sum of one dollar to us in hand paid and other valuable considerations by us received, do hereby sell, assign, transfer, and set over unto Arthur G. Fries, the party of the second part, all our right, title, and interest in and to the said business formerly conducted by us in the city of Buffalo, N. Y., and known under the assumed name of 'Monarch Hardware Co.,' and in and to its good will and assets of every name and nature, including all its patterns, tools, and property. And we do hereby also sell, assign, and set over unto the said party of the second part the following unfilled orders for hardware specialties:

| R. K. Carter & Co. | Order dated October | 6, 1906. |
| " " " " " | " " " | 31, 1906. |
| " " " " " | " " January | 14, 1907. |
| " " " " " | " " March | 11, 1907. |
| " " " " " | " " " | 22, 1907. |
| " " " " " | " " " | 24, 1907. |
| Stanffer, Echelman & Co. | " " December | 1, 1906. |
| Montgomery & Ward Co. | " " " | 17, 1906. |
| Oliver Bros. Purchasing Co. | " " " | 1, 1906. |

"And the parties of the first part do hereby covenant that the above orders are bona fide unfilled and uncancelled orders; that there are no liens or incumbrances upon said properties now outstanding, or claims, debts, or liabilities due and owing by the parties of the first part which are a lien or incumbrance upon the property this day transferred and assigned to the party of the second part. And the parties of the first part, for a valuable consideration to them paid, do hereby covenant and agree not to engage or compete in the manufacture or sale of hardware specialties in the city of Buffalo, N. Y., for a period of ten years from the date hereof. And the parties of the first part do hereby covenant and agree that the second party shall not be liable for any acts or omissions of the Monarch Hardware Co., its owners, employés, or agents, prior to the date of these presents.

"In witness whereof, the parties hereto have hereunto set their hands and seals this 1st day of April, in the year of our Lord, One Thousand Nine Hundred and Seven.     [Signed]     Edith E. Parr.     [L. S.]
                                                   "Frank E. Parr.     [L. S.]
                                                   "Arthur G. Fries.     [L. S.]
"Witnesses:  A. G. Bartholomew."

At the same time and on the same day the plaintiff and the defendant Frank Parr entered into a separate and additional agreement, viz.:

"Agreement made at Buffalo, N. Y., this 1st day of April, 1907, by and between Arthur G. Fries, party of the first part, and Frank Parr, party of the second part, both residing in said city:

"Whereas, the party of the first part has purchased the hardware specialty business conducted under the name of the Monarch Hardware Company;

"And whereas, the second party desires to enter the employment of the first party in connection with the conduct of said business:

"Now, this indenture witnesseth, for and in consideration of the mutual promises and agreements herein contained, and for other good and valuable

considerations had and received, the parties hereto do agree for and with each other as follows:

"First. The first party hereby employs and the second party hereby agrees to work for first party at and upon the manufacture of hardware specialties for a term of one year, unless terminated sooner, for the salary of fifteen dollars ($15) per week, payable out of the profits of said business. At the end of each six months' continuous employment a balance is to be struck, and a further bonus or salary for faithful services shall be paid second party, consisting of one-half the actual cash net profits accruing by and through said business.

"Second. The second party shall in no way or manner obligate the first party or said business in or upon any contract, purchase, sale, lease, or pledge; the entire financial management of said business to be in the sole care and charge of first party.

"Third. The rent of the portion of premises No. 330 Washington St., Buffalo, N. Y., to be occupied by said hardware business, shall be fixed at $10.00 per month. Said rent and any advances for tools, machinery, labor, or materials shall be a charge against the receipts of said business and shall be paid before any profits are reckoned or distributed.

"Fourth. The second party agrees to be temperate in habits and diligent in his work during the continuance of this agreement, and hereby agrees to forfeit all rights which have accrued or may accrue hereunder, in the event he becomes intemperate or intoxicated or negligent and careless while in the employ of first party.

"Fifth. The second party agrees to engage in no other business or occupation during the continuance of this agreement, and agrees to give to the first party any ideas or inventions and benefits hereunder in said hardware business which he may originate or develop or use during said period.

"In witness whereof, the parties have hereunto set their hands and seals on the day and year first above mentioned.

"[Signed]                    Arthur G. Fries.   [L. S.]
                             "Frank Parr.       [L. S.]"

The plaintiff did take the business and advance money for its carrying on, and the defendant Parr continued to work for him in manufacturing the articles in question for about 18 months. He then left, and in the name of his wife, his codefendant, established a separate business, and proceeded to make and sell in a small way the same articles, in connection, however, with a "molasses gate," an entirely new article not manufactured before, which constitutes the bulk of the business done. The defendant Frank Parr has since acquired and conducts this business and is solely interested in it.

This action is brought to restrain the defendant from engaging, or competing with the plaintiff, in the manufacture or sale of hardware specialties for the period of 10 years from the date of the bill of sale of April 1, 1907. The entire question presented is whether the agreement of April 1, 1907, so far as it limits the defendant's business activities, is enforceable.

[1] An examination of the first of these agreements shows that it is simply a bill of sale of the business in question. The plaintiff, Fries, does not agree, on his part, to do a single thing. He agrees to advance no moneys. He does not agree to continue the business for a day. So far as Fries is concerned, he simply acquired, by virtue of the bill of sale, title to such property and orders as the defendant had. The evidence shows that the property transferred was worth from $75 to $100, and that Fries did not pay a cent for this transfer. So far

as this instrument and agreement is concerned, there was no mutuality —no consideration to support the promise and agreement on the part of the defendant not to engage in business again for ten years. If the first agreement were the only one between the parties, the contract prohibiting the defendant from again engaging in business must, from necessity, fail for want of mutuality.

[2] Having obtained by the bill of sale the defendant's business, the plaintiff, however, by a separate instrument, reciting that he had acquired the defendant's business, agreed to employ the defendant Frank Parr for the term of one year at a stated weekly salary, and an interest in the profits earned. Parr on his part agreed, during his employment, to engage in no other business or occupation. The very most that can be claimed for these two instruments on the part of the plaintiff is that they are to be regarded as parts of one agreement, and one the consideration for the other. We shall so regard these agreements, and they amount to this: That in consideration of the employment of the defendant Frank Parr for one year, both defendants promised and agreed not to engage in the manufacture of hardware specialties for 10 years. The agreement as framed forbids that they "engage or compete in the manufacture or sale of hardware specialties in the city of Buffalo for a period of ten years." The prohibition is in terms so broad that it covers every kind of hardware specialties, whether the articles manufactured and sold compete with the plaintiff or not.

The plaintiff, however, only asks on this trial for an injunction as to the particular articles manufactured at the time of the making of the bill of sale. The validity and enforceability of the contract, however, must be judged by the provisions as written, and not by the concessions of one of the parties to it. Studying its provisions in the light of the circumstances of the case, we are impressed with the view that it is a harsh and oppressive contract. The agreement to employ for a year is no adequate consideration for an agreement not to engage in the same business, for 10 years, especially when coupled with no other obligations on the part of plaintiff to prosecute the business in any way for the benefit of the defendants, or either of them, or to advance money in the business, especially where nothing was in fact paid as a consideration for its transfer. It is no legal answer to say that plaintiff has in fact invested nearly $1,000 in the enterprise. The test is what duties and obligations the written agreements imposed. It seems to the court that it would be harsh and inequitable to tie the hands of the defendants under such circumstances. It is a rule that contracts unfair and oppressive to one of the parties will not be enforced against him by injunction. Joyce on Injunctions, § 435, citing Pullman Car Co. v. Missouri R. R. Co. (C. C.) 55 Fed. 138; Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Oil Creek Co. v. Atlantic R. R. Co., 57 Pa. 65; Backus' Appeal, 58 Pa. 186.

[3] Especially must this be true in contracts of this particular character, providing for restrictions upon the business activities of one of the parties to it. It is well understood that the courts look with disfavor on agreements of this kind. Originally all contracts in restraint

of trade were deemed illegal and void on ground of public policy. Subsequently the rule was somewhat relaxed, where the restrictions were limited as to time and territory, and it became necessary to uphold such agreements in order that the purchaser of a going business, who had acquired it, together with the good will, for a good and sufficient consideration, might get the benefit of his bargain. Such are the cases of Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Curtis v. Gokey, 68 N. Y. 300; Wood v. Whitehead Bros., 165 N. Y. 545, 59 N. E. 357; Broadbookes v. Tolles, 114 App. Div. 646, 99 N. Y. Supp. 996. Here, however, the plaintiff in fact paid nothing, and agreed to pay nothing. He never in terms obligated himself to the extent of one penny for the business or the good will. He acquired what there was to it, without advancing a cent to the defendants for it. All that can be claimed in any event was that by the second agreement he promised to employ the defendant Frank Parr for a year, and no longer.

To enforce by injunction an agreement against again engaging in business under these circumstances would be going, we think, a step further than the courts have heretofore gone, and we are not disposed to exercise the injunctive powers of the court in this case, where we feel that it would work not only hardship and injustice toward the defendant, but would deprive the public of the benefit of the defendant's labor and enterprise. The courts refuse to enforce such improvident agreements, not so much out of consideration of the parties themselves, perhaps, as from considerations of public policy and the interests of the public itself, which is interested in the labor, enterprise, and business activities of its citizens.

[4] These reasons become all the stronger and controlling when we come to consider the other facts and circumstances of this case. The second agreement, by which the plaintiff contracted to employ the defendant Frank Parr, among other things, provided as follows:

"First. The first party hereby employs and the second party hereby agrees to work for first party at and upon the manufacture of hardware specialties for a term of one year, unless sooner terminated, for the salary of fifteen dollars ($15) per week, payable out of the profits of said business. At the end of each six months' continuous employment a balance is to be struck, and a further bonus or salary for faithful services shall be paid second party, consisting of one-half the actual cash net profits accruing by and through said business."

The evidence tends to show, and seems to be undisputed, that the business prospered, so long, at least, as Parr was employed in it. At least, it shows that profits were made, although the amount or extent of such profits remain undisclosed. The evidence also shows that these profits were not represented, to any extent, at least, by cash on hand, but were invested, and represented by material, stock, and machinery on hand, and accounts owing. The evidence also shows that the defendant Frank Parr, at different times, asked the plaintiff for a statement of the condition of the business, to the end that he might be paid his share of the profits; that the plaintiff never furnished him with any such statement, putting him off for one reason or another, contending, among other things, that he was unable to furnish it until proper in-

ventories had been completed, and referred the defendant to the books, saying he was at liberty to inspect them for himself, although the defendant Frank Parr testifies the plaintiff refused to permit him to have an accountant go over them for him. The defendant disclaimed any knowledge of bookkeeping which would enable him to understand the books.

The plaintiff contends that by the terms of the agreement he was not required to pay the defendant Frank Parr any share of the profits, unless there was cash on hand with which to make the payment, and that at no time during his employment did such a condition exist; but that, on the contrary, the demands of the business required constant advances by him, and therefore he was guilty of no breach of the agreement on his part, either by failure to strike a balance, furnish a statement, or pay any profits. It must be conceded the agreement might have been more explicit. Nevertheless, I am of the opinion that it was the duty of the plaintiff every six months to strike a balance, ascertain the profits, and advise the defendant of the result. The business was the plaintiff's. The defendant Parr was not his partner. He only had the right to share in profits by way of compensation for services. The books were kept by the plaintiff, or by his bookkeeper, not by the defendant. When, therefore, the agreement provided that a balance should be struck every six months, and one-half the profits paid Parr as "a further bonus or salary for services," the only fair inference is that the plaintiff was to strike and ascertain the balance and profits. This he never did, and in this he failed to keep his agreement with the defendant Frank Parr.

We think he also was in default in not paying Parr each six months one-half the profits, and that the contention that this one-half of the profits was only to be paid from cash in hand is not tenable. The words "cash net profits," we think, should be construed in the light of all the circumstances of the case. The third clause of the contract specifies how the profits are to be ascertained before distribution. It was the evident intention of the parties that the distribution should be made every six months; otherwise, it would have been within the power of the plaintiff to have indefinitely postponed any distribution whatever, by simply keeping the money received invested in stock, machinery, and other things. He might have expanded the business to thousands of dollars, representing all profits, in fact, without being in ready funds at any particular time. We cannot believe that the parties to the agreement contemplated the deferring of any distribution to any such extent. It would seem that they must have used the words "actual cash net profits" in the sense "net profits" at their actual "*cash*" valuation, where the increase of the business was represented by assets, whether invested in stock, machinery, or outstanding accounts. That is, in our opinion, the only possible working interpretation which can be given this language. If we are correct in these views, then the plaintiff has failed to live up to the terms of his agreement with Parr, either as to ascertaining balances or distributing profits.

[5] Being in default in these respects, can he come into equity and ask this court to enjoin the defendant for an alleged violation of the

agreement on his part not to engage, or compete with the plaintiff, in a like business?. We think not, upon the commonest principles of law and equity. N. Y. Chemical Co. v. Halleck (Com. Pl.) 15 N. Y. Supp. 517; Hill v. Haberkorn, 6 N. Y. Supp. 474†; Rubber Tip Pencil Co. v. Hovey, 9 Abb. Prac. (N. S.) 74. We think the defendant Frank Parr was justified in abandoning the employment of the plaintiff and starting an enterprise of his own.

[6] It further appears from the evidence that the defendants not only started the business complained of, but continued it for two years before the plaintiff complained of their acts or took legal proceedings to enjoin them, and that during the two years the plaintiff was fully advised of what the defendants were doing and entered no protest against it. In the meantime the defendants have built up for themselves quite a successful and profitable business. We think the plaintiff has slept on his rights, if he had any, and that he was called on to act promptly, and could not delay proceedings without being charged with the consequences of his laches.

The plaintiff's complaint should be dismissed, with costs. Let findings be prepared in accordance with the views above expressea.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 53 Hun, 637.